UNITED STATES DISTICT COURT
EASTERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| FRANCES SHAURIS, | ) | **CIVIL ACTION** |
|  | ) | **NO:** |
|  | ) |  |
| Plaintiff, | ) | **JURY TRIAL** |
|  | ) | **DEMANDED** |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| PARAMOUNT BEAUTY DISTRIBUTING | ) |  |
| ASSOCIATES, INC., and | ) |  |
| EVAN FEINGOLD; | ) |  |
|  | ) |  |
| Defendants. | ) |  |

_____

## COMPLAINT AND JURY DEMAND

### Parties

1.      The Plaintiff, Frances Shauris ("Ms. Shauris" or "Plaintiff"), is a female resident of the State of New York residing at 415 Larkfield Road, East Northport, New York, 11731.

2.      Defendant, Paramount Beauty Distributing Associates, Inc. (the "Company" or "Paramount Beauty") is incorporated under New York State law.   Paramount Beauty's principal office is located at 41 Mercedes Way, Unit 34, Edgewood, New York, 11717.

3.      Evan Feingold ("Mr. Feingold") is an adult man who resides in New York.  At all relevant times, Mr. Feingold was the President and Owner of the Company.  Mr. Feingold is named in both his individual and official capacity.

### Jurisdiction and Venue

4.      The court has subject matter jurisdiction under 28 U.S.C. §1331 because Ms. Shauris has brought a claim pursuant to the Age Discrimination in Employment Act ("ADEA"),

29 U.S.C. §623 *et seq.* and Title VII, 42 U.S.C. §§2000e, *et. seq.* This court may exercise supplemental jurisdiction over the Plaintiff's state law claims. 28 U.S.C. §1367.

5.      Venue is appropriate in the Eastern District of New York as the Plaintiff lives in the Eastern District of New York and the acts or omissions giving rise to the claims in this Complaint occurred in the Eastern District of New York.

6.      This court has personal jurisdiction over the Company because the Company is a resident of the State of New York, including because it is incorporated in New York and its principal place of business is in New York.  Further, the Company has engaged in and transacted business in the State of New York, including by managing and/or operating a business in New York and/or employing the Plaintiff in New York, and Plaintiff's causes of action stem largely from business transactions within the State of New York.  Indeed, the Plaintiff was employed by the Company in the State of New York, was managed by the Company in the State of New York, and was terminated by the Company in the State of New York.

7.      The court has jurisdiction over Defendant, Even Feingold (in both his individual and official capacity), because Mr. Feingold is a resident of New York.  Additionally, Mr. Feingold availed himself of New York law by transacting business in New York, owning and operating a business in New York, and managing and terminating employees, including Ms. Shauris, in the State of New York.

**<u>Statement of Facts</u>**

8.      Ms. Shauris is a 68-year-old woman (Born in April 1953).

9.      On or around May 28, 1991, Ms. Shauris began her employment with the Company as a position titled Outside Sales Representative.

10.     At the time that Ms. Shauris was hired by the Company, she was approximately 38 years old.

11.     Upon information and belief, at all relevant times, the Company employed 20 or more employees for 20 or more calendar weeks during the preceding 12 months.

12.     At all relevant times, Ms. Shauris was a qualified employee and her job performance was satisfactory.

13.     In or around late 2017, Ms. Shauris was increasingly subjected to discriminatory comments and treatment, clearly based on her age and/or her status as an older woman.

14.     Indeed, the Owner and President of the Company, Evan Feingold ("Mr. Feingold"), made harassing and discriminatory comments about Ms. Shauris' age and/or the fact that she was an older woman.

15.     For example, on one occasion, Mr. Feingold called Ms. Shauris into a meeting. Notably, the Business Development Manager, Donna Maggi ("Ms. Maggi") was also present.

16.     Upon information and belief, Ms. Maggi is a younger woman who is at least 15 years younger than Ms. Shauris.

17.     During this meeting, Mr. Feingold made discriminatory statements, including statements where he pressured Ms. Shauris to retire and repeatedly asked her when she was going to retire (which was clearly directly related to Ms. Shauris' age and/or due to the fact that she was an older woman).

18.     Notably, Mr. Feingold is a man who is more than 10 years younger than Ms. Shauris.

19.     Ms. Shauris was shocked by these clearly discriminatory comments. Importantly, at no point prior to this had Ms. Shauris indicated that she planned to retire in the foreseeable future. In fact, Ms. Shauris anticipated working for a substantial additional period.

20.     As such, Ms. Shauris informed Mr. Feingold and Ms. Maggi that she did not intend to retire any time in the foreseeable future.

21.     Mr. Feingold made a strange face in response. He was demonstrably upset and annoyed by Ms. Shauris' response and curtly dismissed Ms. Shauris from the meeting.

22.     Notably, Mr. Feingold did not make similar comments (regarding age or retirement) to the younger employees, including the younger female employees or the older men. Indeed, it was clear that Ms. Shauris was being singled out as an older woman.

23.     It was clear through Mr. Feingold's behavior, including his comments and his demeanor, that Mr. Feingold was discriminating against Ms. Shauris based on her age and her status as an older woman.

24.     Following the meeting wherein Mr. Feingold made discriminatory statements about retirement, Mr. Feingold continued to pressure Ms. Shauris to retire in a discriminatory manner.

25.     Mr. Feingold repeatedly asked Ms. Shauris when she was going to retire, explaining that he wanted her to "move on."

26.     In response, Ms. Shauris clearly conveyed protected discrimination-related concerns regarding these inappropriate comments and conveyed that she wanted the discriminatory comments to stop.

27.     However, despite her expression of protected concerns, Mr. Feingold's behavior did not stop, and in fact it continued.

28.     Notably, it was abundantly clear that the Company's culture among management and many other employees prioritized youthfulness, particularly with regard to the female employees. Indeed, Ms. Shauris noticed that the younger female employees were given more praise and positive feedback.

29.     On other occasions, when there were public events, management would attend and deliberately sit with or only associate with the younger female employees. Ms. Shauris noticed this, and it was clear that management was more dismissive of her presence and/or she felt cast aside (due to her age and her status as an older female).

30.     Further, management also frequently attended social gatherings outside of work (which were often a networking opportunity). Notably, management would invite and bring the younger female employees to these types of networking events, which Ms. Shauris was not included in.

31.     Indeed, as these social gatherings were often used for networking, this resulted in Ms. Shauris not being given as many networking opportunities as the younger female employees and had a direct impact on her client base, commissions, and/or overall compensation.

32.     In or around January 2019, it became apparent that the Company (including through Mr. Feingold) was exhibiting a pattern and practice of hiring younger sales representatives who were more than 15 years younger than Ms. Shauris.

33.     Indeed, it was again clear to Ms. Shauris that the Company, including Mr. Feingold, had a preference for younger sales representatives, and in particular, the younger female sales representatives.

34.     In addition to hiring younger (female) sales representatives, Mr. Feingold also began to remove territory assignments from Ms. Shauris and reassign the geographic areas to

younger, newly hired employees, including the younger female sales representatives.   This reduced the compensation Ms. Shauris could reasonably earn and likewise made it more difficult for Ms. Shauris to achieve goals.  Thus, Mr. Feingold appeared to purposefully be making it more difficult for Ms. Shauris to accomplish her job goals, while favoring younger and/or younger female employees and making it easier for them to succeed.

35.     Importantly, Mr. Feingold did not reassign or remove territory assignments from other, younger and/or younger female sales representatives.

36.     In response to Mr. Feingold's discriminatory and/or retaliatory treatment, Ms. Shauris raised protected concerns to Mr. Feingold that he was removing territory assignments from her (Ms. Shauris), seemingly due to her age, status as an older woman, and/or in an attempt to pressure her to retire because of her age and/or status as an older woman.

37.     Mr. Feingold was dismissive of Ms. Shauris' protected concerns and instead angrily demanded to know when she was going to retire. Mr. Feingold made clear that he believed that because of her age and/or because she was an older woman, Ms. Shauris should begin the process of transitioning out of her job at the Company, in anticipation that she would eventually retire and that her employment with the Company would thereby end.

38.     In or around July 2019, Mr. Feingold appointed Ms. Maggi as Ms. Shauris' manager.

39.     When Ms. Maggi became Ms. Shauris' manager, she (Ms. Maggi) continued Mr. Feingold's discriminatory pattern and practice of removing territory assignments from Ms. Shauris and reassigning them to younger and/or younger female employees.

40.     Indeed, Ms. Shauris received a significant portion of her compensation through commissions based on territory assignments. Thus, the removal and reassignment of territories

by Mr. Feingold and Ms. Maggi caused Ms. Shauris to lose a significant amount of compensation and made it more difficult for Ms. Shauris to succeed in her job.

41.     In response to Ms. Maggi's discriminatory conduct, Ms. Shauris reiterated her protected concerns regarding the discriminatory removal and reassignment of territories, which appeared to be part of an ongoing attempt to pressure her to retire in light of her older age and/or because she was an older woman.

42.     Ms. Maggi was dismissive of Ms. Shauris' protected concerns and continued to remove territories from Ms. Shauris and reassign them to the younger and/or younger female employees (including Ms. Maggi herself).

43.     Frustrated with Ms. Maggi's discriminatory and retaliatory conduct, Ms. Shauris further contacted the Director of Sales of the Company, Jeremy Millsaps ("Mr. Millsaps") and raised protected concerns that the younger Ms. Maggi was removing areas of assignment from Ms. Shauris and giving them to other younger and/or younger female employees, including Ms. Maggi herself.

44.     Mr. Millsaps refused to adequately address Ms. Shauris' protected concerns and dismissively directed Ms. Shauris to contact Ms. Maggi instead.

45.     In light of the Company's refusal to address the clearly discriminatory conduct, Ms. Maggi continued her discriminatory and retaliatory behavior of removing business assignments away from Ms. Shauris and reassigning these to younger and/or younger female employees, including herself.

46.     On or around March 19, 2020, Mr. Millsaps contacted Ms. Shauris and abruptly informed her that she was being laid off, allegedly due to COVID-19.

47.     Ms. Shauris was shocked. Notably, she was not aware of any other widespread layoffs in the Company. Indeed, upon information and belief, the Company retained a number of younger and/or younger female employees (who were similarly situated to Ms. Shauris) at the time that it laid off Ms. Shauris.

48.     As such, on or around March 19, 2020, Ms. Shauris was involuntarily terminated from the Company. Indeed, the Company never recalled Ms. Shauris from lay off and instead permanently terminated her.

49.     Notably, Mr. Feingold continued to make the important decisions at the Company and was routinely involved in all termination decisions in the Company.

50.     Indeed, upon information and belief, Mr. Feingold was involved in the decision to lay off / terminate Ms. Shauris.

51.     Upon information and belief, the Company did not in fact institute a Company-wide furlough or layoff at the time it terminated Ms. Shauris. Indeed, younger and/or younger female sales representative employees were able to continue working and/or were not formally terminated around the same time as Ms. Shauris.

52.     Indeed, Ms. Maggi, who performed outside sales responsibilities and who was at least 15 years younger than Ms. Shauris and was significantly less experienced than Ms. Shauris, was not selected for termination.

53.     Lorelle (last name unknown "Lorelle"), an outside sales representative who was also at least 15 years younger than Ms. Shauris and significantly less experienced than Ms. Shauris (notably, Lorelle had at least 21 years less experience with the Company), was not selected for termination.

54.     Furthermore, Linnet (last name unknown "Linnet"), an outside sales representative who was, upon information and belief, in her 30's, and had been hired within the last five or so years was also not selected for termination.

55.     Thus, even if it were to be assumed that there was a downturn in business necessitating a lay off or termination in Ms. Shauris' department (which there wasn't), there were a number of other, younger and/or female sales representatives who were less experienced than Ms. Shauris and who should have been selected for termination over Ms. Shauris.

56.     Indeed, Ms. Shauris was more qualified and had more seniority than numerous younger and/or younger female employees in the same job who were allowed to continue working for the Company.

57.     Furthermore, Ms. Shauris was performing as well as or better than other younger and/or younger female employees who were not terminated.

58.     Notably, to the extent that the Company eventually laid off or otherwise furloughed other younger and/or younger female sales representatives, these younger and/or younger female sales representatives were allowed to return to work from the layoff/furlough and were recalled back to work by the Company.

59.     As further evidence that the Company's justification for termination was pretext, shortly after Ms. Shauris' termination, the Company proceeded to hire new outside sales representatives during or around June and/or July of 2020 (despite the alleged claims of a need to reduce their force in Ms. Shauris' department).  Upon information and belief, these newly hired sales representatives were significantly younger than Ms. Shauris and/or were significantly younger females.

60.     Indeed, upon information and belief, Ms. Shauris was replaced by a younger and/or younger female individual.

61.     Notably, around the summer of 2020, when Ms. Shauris learned that the Company was hiring new employees and/or allowing the younger and/or younger female sales representatives to return to work, Ms. Shauris contacted Mr. Millsaps to inquire about her return to work. Indeed, Ms. Shauris requested to be returned to her position with the Company.

62.     However, Mr. Millsaps curtly informed Ms. Shauris that she was not being brought back and therefore refused to recall and/or to bring Ms. Shauris back to work, despite the fact that the Company was actively bringing back and/or hiring new sales representatives.

63.     As such, it is clear that Ms. Shauris' termination was the result of discriminatory and retaliatory bias.

64.     On October 28, 2020, Ms. Shauris timely filed a Charge of Discrimination with the New York City Commission on Human Rights ("NYCCHR"), which was cross filed with the United States Equal Employment Opportunity Commission ("EEOC").

65.     On or around June 22, 2021, the NYCCHR issued a dismissal for administrative convenience to allow Ms. Shauris to file in court.

66.     On or around July 28, 2021, Ms. Shauris received a right to sue letter from the EEOC.

67.     This lawsuit is timely filed.

## COUNT I

### (Age Discrimination in Violation of 29 U.S.C. §§ 621 *et seq*.)

### Ms. Shauris v. The Company

68.     Ms. Shauris incorporates all paragraphs above and below as if set forth fully herein.

69.     The Company is an employer under the definition of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq*. (hereinafter, "ADEA") because the Company is engaged in an industry affecting commerce and, upon information and belief, had twenty or more employees for each working day in each of twenty or more calendar weeks during the relevant years.

70.     Ms. Shauris was born in 1953 and, at all relevant times, was over 40 years old.

71.     The Company, including, through its agents, harassed and discriminated against the Plaintiff with respect to her compensation, terms, conditions, or privileges of employment, because of the Plaintiff's age, because Plaintiff was over 40 years old, and/or because Plaintiff was an older woman ("age plus" discrimination).

72.     More specifically, and by way of illustration, the Company subjected Ms. Shauris to adverse actions because of her age, including, but not limited to, subjecting Ms. Shauris to a harassing and hostile work environment (including harassment of Ms. Shauris with offensive comments related to her age and pressure to retire), removing and reassigning Ms. Shauris' territory assignments, selecting Ms. Shauris for a layoff, refusing to let Ms. Shauris return to work, terminating Ms. Shauris' employment, and refusing to recall or rehire Ms. Shauris because Ms. Shauris was over 40 years old and/or because Ms. Shauris was an older woman ("age plus" discrimination).

73.     Indeed, upon information and belief, Ms. Shauris was replaced by an individual who is significantly younger than she was.

74.     The Company willfully violated the ADEA because the Company knew or should have known its conduct was prohibited by Federal law and/or the Company acted with malice and/or with reckless indifference to the federally protected rights of Ms. Shauris.

75.     As a direct and proximate result of the Company's violations of the ADEA, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

76.     Ms. Shauris seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, liquidated (i.e., double) damages, interest, attorney's fees, and costs.

**COUNT II**

**(Age and Sex Discrimination in Violation of the New York State Human Rights Law, Executive Article 15, Section 296)**

**Ms. Shauris v. All Defendants**

77.     Ms. Shauris incorporates all paragraphs above and below as if set forth fully herein.

78.     Ms. Shauris was born in 1953 and, at all relevant times, was over 40 years old.

79.     The Defendants, including, but not limited to, through their agents, harassed and discriminated against the Plaintiff with respect to her compensation, terms, conditions, or

privileges of employment, because of the Plaintiff's age, because Plaintiff was over 40-years-old, because of Plaintiff's sex, and/or because Plaintiff was an older woman ("age plus" and "sex plus" discrimination).

80.    More specifically, and by way of illustration, the Defendants subjected Ms. Shauris to adverse actions because of her age, including, but not limited to, subjecting Ms. Shauris to a harassing and hostile work environment (including harassment of Ms. Shauris with offensive comments related to her age and pressure to retire), removing and reassigning Ms. Shauris' territory assignments, selecting Ms. Shauris for a layoff, refusing to let Ms. Shauris return to work, terminating Ms. Shauris' employment, and refusing to recall or rehire Ms. Shauris, because Ms. Shauris was over 40 years old and/or because Ms. Shauris was an older woman ("age plus" and "sex plus" discrimination).

81.    Indeed, upon information and belief, Ms. Shauris was replaced by an individual who was significantly younger than she was.

82.    Mr. Feingold was involved in the decision to undertake adverse actions against Ms. Shauris, including the decisions to remove sales territories and terminate Ms. Shauris.

83.    Mr. Feingold discharged, expelled, barred, and/or discriminated against Ms. Shauris in her compensation, conditions, and/or privileges of employment based on rights afforded to Ms. Shauris under the NYSHRL.

84.    Mr. Feingold aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYSHRL.

85.    Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Shauris and/or conduct so reckless to amount to such disregard.

86.     As a direct and proximate result of the Defendants' violations of the New York State Human Rights Law, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

87.     The Plaintiff seeks all damages to which he is entitled, including, but not limited to, uncapped compensatory damages (including, but not limited to, emotional distress damages, reduced earning capacity, and lost compensation and benefits, including back pay and front pay), punitive damages, interest, attorneys' fees, and costs.

## COUNT III

**(Age and Sex Discrimination in Violation of the Suffolk County Human Rights Law, Chapter 528 §§5 *et seq*.)**

**Ms. Shauris v. All Defendants**

88.     Ms. Shauris incorporates all paragraphs above and below as if set forth fully herein.

89.     The Company is an employer under the definition of the of Suffolk County Human Rights Law because, at all relevant times, it employed four or more persons.

90.     The Company was an employer located in Suffolk County.

91.     Indeed, Ms. Shauris was employed by the Company in the Suffolk County, was managed by the Company in Suffolk County, and was terminated by the Company in Suffolk County.

92.     Ms. Shauris was born in 1953 and, at all relevant times, was over 40 years old.

93.     The Defendants, including, but not limited to, through their agents, harassed and discriminated against Ms. Shauris with respect to her compensation, terms, conditions, or privileges of employment, because of Ms. Shauris' age, because Ms. Shauris was over 40-years-

old, because of Ms. Shauris' sex, and/or because Ms. Shauris was an older woman ("age plus" and "sex plus" discrimination).

94.     More specifically, and by way of illustration, the Defendants subjected Ms. Shauris to adverse actions because of her age, including, but not limited to, subjecting Ms. Shauris to a harassing and hostile work environment (including harassment of Ms. Shauris with offensive comments related to her age and pressure to retire), removing and reassigning Ms. Shauris' territory assignments, selecting Ms. Shauris for a layoff, refusing to let Ms. Shauris return to work, terminating Ms. Shauris' employment, and refusing to recall or rehire Ms. Shauris.

95.     Younger employees of the Company were treated more favorably than Ms. Shauris including through not being improperly harassed or subjected to offensive comments related to age, not being selected for a layoff, being allowed to return to work, not being terminated, and being recalled or rehired.

96.     Indeed, upon information and belief, Ms. Shauris was replaced by an individual who was significantly younger than she was.

97.     Mr. Feingold had the authority to engage in any act on behalf of the Company. Indeed, Mr. Feingold was involved in the decisions to undertake adverse actions against Ms. Shauris, including the decision to remove sales territories and terminate Ms. Shauris.

98.     Mr. Feingold discharged, expelled, barred, and/or discriminated against Ms. Shauris in her compensation, conditions, and/or privileges of employment based on rights afforded to Ms. Shauris under the Suffolk County Human Rights Law.

99.     Mr. Feingold aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide

assistance to individuals participating in conduct forbidden under the Suffolk County Human Rights Law.

100.    Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Shauris and/or conduct so reckless to amount to such disregard.

101.    As a direct and proximate result of the Defendants' violations of Suffolk County Human Rights Law, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

102.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost pay and benefits (including but not limited to back pay and front pay), reduced earning capacity, other monetary damages, emotional distress damages, other compensatory damages, punitive damages, interest, attorneys' fees, and costs.

## COUNT IV

**(Retaliation in Violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*)**

**Ms. Shauris v. The Company**

103.    Ms. Shauris incorporates all paragraphs above and below as if set forth fully herein.

104.    Ms. Shauris engaged in activity protected under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, including, but not limited to, by opposing and expressing protected concerns, and/or engaging in other protected activity, related to age discrimination.

105.    The Company retaliated against the Plaintiff for engaging in such opposition to age discrimination, by subjecting Ms. Shauris to adverse actions, including, but not limited to,

subjecting Ms. Shauris to a harassing and hostile work environment (including harassment of Ms. Shauris with offensive comments related to her age and pressure to retire), removing and reassigning Ms. Shauris' territory assignments, selecting Ms. Shauris for a layoff, refusing to let Ms. Shauris return to work, terminating Ms. Shauris' employment, and refusing to recall or rehire Ms. Shauris.

106.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Shauris' exercising of, or enjoyment of, one or more rights granted by the ADEA.

107.    The Company willfully violated the ADEA because the Company knew or should have known its conduct was prohibited by Federal law and/or the Company acted with malice and/or reckless indifference to the federally protected rights of Ms. Shauris.

108.    As a direct and proximate result of the Company's violations of the ADEA, Mr. Shauris has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

109.    Ms. Shauris seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, liquidated (*i.e.,* double) damages, attorneys' fees, interest, and costs.

**COUNT V**

**(Retaliation in Violation of the New York State Human Rights Law, Executive Article 15, Section 296)**

**Ms. Shauris v. All Defendants**

110.    Ms. Shauris incorporates all paragraphs above and below as if set forth fully herein.

111.    Ms. Shauris engaged in protected activity under the New York State Human Rights Law, including, but not limited to, opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company and Mr. Feingold due to Ms. Shauris' age, sex, and/or status as an older woman ("age plus" and "sex plus" discrimination).

112.    More specifically, and by way of illustration, the Company subjected Ms. Shauris to adverse actions in retaliation for undertaking protected activities, including but not limited to, subjecting Ms. Shauris to a harassing and hostile work environment (including harassment of Ms. Shauris with offensive comments related to her age and pressure to retire), removing and reassigning Ms. Shauris' territory assignments, selecting Ms. Shauris for a layoff, refusing to let Ms. Shauris return to work, terminating Ms. Shauris' employment, and refusing to recall or rehire Ms. Shauris.

113.    Mr. Feingold was involved in the decision to terminate Ms. Shauris.

114.    Mr. Feingold discharged, expelled, barred, and/or discriminated against Ms. Shauris in her compensation, conditions, and/or privileges of employment based on rights afforded to Ms. Shauris under the New York State Human Rights Law.

115.    Mr. Feingold aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide

assistance to individuals participating in conduct forbidden under the New York State Human Rights Law.

116.    Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Shauris and/or conduct so reckless to amount to such disregard.

117.    As a direct and proximate result of Defendants' violation of The New York State Human Rights Law, Ms. Shauris has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

118.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), emotional distress damages, injury to reputation, punitive damages, interest, attorney's fees, and costs.

## COUNT VI

### (Retaliation in Violation of the Suffolk County Human Rights Law, Chapter 528 §§5 *et seq.*)

### Ms. Shauris v. All Defendants

119.    Ms. Shauris incorporates all paragraphs above and below as if set forth fully herein.

120.    The Company is an employer under the definition of the of Suffolk County Human Rights Law because, at all relevant times, it employed four or more persons.

121.    The Company was an employer located in Suffolk County.

122.    Indeed, Ms. Shauris was employed by the Company in the Suffolk County, was managed by the Company in Suffolk County, and was terminated by the Company in Suffolk County.

123.    Ms. Shauris engaged in protected activity under the Suffolk County Human Rights Law, including, but not limited to, opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Ms. Shauris' age, because Ms. Shauris was over 40-years-old, because of Ms. Shauris' sex, and/or because Ms. Shauris was an older woman ("age plus" and "sex plus" discrimination).

124.    More specifically, and by way of illustration, the Company subjected Ms. Shauris to adverse actions in retaliation for undertaking protected activities, including but not limited to, subjecting Ms. Shauris to a harassing and hostile work environment (including harassment of Ms. Shauris with offensive comments related to her age and pressure to retire), removing and reassigning Ms. Shauris' territory assignments, selecting Ms. Shauris for a layoff, refusing to let Ms. Shauris return to work, terminating Ms. Shauris' employment, and refusing to recall or rehire Ms. Shauris.

125.    Mr. Feingold had the authority to engage in any act on behalf of the Company. Indeed, Mr. Feingold was involved in the decisions to undertake adverse actions against Ms. Shauris, including the decision to remove sales territories and terminate Ms. Shauris.

126.    Mr. Feingold discharged, expelled, barred, and/or discriminated against Ms. Shauris in her compensation, conditions, and/or privileges of employment based on rights afforded to Ms. Shauris under the Suffolk County Human Rights Law.

127. Mr. Feingold aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the Suffolk County Human Rights Law.

128. Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Shauris and/or conduct so reckless to amount to such disregard.

129. As a direct and proximate result of the Defendants' violations of Suffolk County Human Rights Law, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

130. The Plaintiff seeks all damages to which she is entitled, including, but not limited to, compensatory damages (including, but not limited to, emotional distress damages, reduced earning capacity, and lost compensation and benefits, including back pay and front pay), punitive damages, interest, attorneys' fees, and costs.

WHEREFORE, the plaintiff, Frances Shauris, respectfully requests that this honorable court:

A. Schedule this matter for trial by jury, and;

B. Find the Defendants liable on all counts;

C. Award the Plaintiff monetary damages, including, but not limited to, back pay, lost compensation and benefits, front pay, and other monetary harms;

D. Award the Plaintiff compensatory damages, including, but not limited for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish and, loss of enjoyment of life;

E.  Award the Plaintiff damages for emotional distress and suffering;

F.  Award the Plaintiff damages for harm to reputation and reduced earning capacity;

G.  Award the Plaintiff liquidated (i.e. double) damages;

H.  Award the Plaintiff punitive damages;

I.  Award the Plaintiff her reasonable attorney's fees;

J.  Award the Plaintiff interest and costs;

K.  Award the Plaintiff all other damages to which he is entitled; and

L.  Grant such further relief as is just and equitable.

Respectfully Submitted,

FRANCES SHAURIS

By her attorneys,

THE LAW OFFICES OF WYATT &
ASSOCIATES P.L.L.C

Date: September 2, 2021          By: _____

Benjamin J. Wyatt, NY Bar # 5604590
BWyatt@Wyattlegalservices.com

Timothy J. Brock, NY Bar # 5614151
TBrock@wyattlegalservices.com

Katherine A. Gabriel, NY Bar # 5782487
Katherine@Wyattlegalservices.com

MAILING ADDRESS:
The Law Offices of Wyatt & Associates,
P.L.L.C.
63 Emerald Street PMB 603
Keene NH 03431

Main Office Address:
The Law Offices of Wyatt & Associates,
P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1111
Facsimile: (603) 685-2868

New York Office:
418 Broadway, 2nd Floor
Albany, NY 12207
Telephone: (603) 357-1111
Facsimile: (603) 685-2868